**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF
AMERICA,**

                    **Plaintiff,**                      5:18-cv-810
                                                             (GLS/DEP)

                        **v.**

**$11,585.00 AND $24,077.00 IN
UNITED STATES CURRENCY,**

                    **Defendants.**
_____

## SUMMARY ORDER

     The government commenced this civil forfeiture proceeding on July 9, 2018 by filing a verified complaint of forfeiture *in rem*. (Compl., Dkt. No. 1); *see* Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions G(2). The action sought to forfeit and condemn for the use and benefit of the government $11,585.00 in United States currency seized from Francine Haley's car and $24,077.00 in United States currency seized from her residence because of its connection to marijuana distribution. (*Id.* at 1-2.) The Clerk issued an arrest warrant *in rem* on July 9, 2018, (Dkt. No. 2), which was executed on July 25, 2018 by the United States Marshal, (Dkt. No. 3). The defendant currency remains in the custody of the Marshal. (Compl. ¶ 4.)

On or about April 9, 2018, Haley filed an administrative claim for the defendant currency with the Drug Enforcement Administration and elected to have the matter of its seizure and forfeiture referred for judicial action. (*Id.* ¶ 48.) On July 25, 2018, the government provided direct notice of this action by mailing a copy of the arrest warrant *in rem* and verified complaint to Jacek Lentz, the attorney representing Haley in the administrative forfeiture proceedings. (Dkt. No. 6); *see* Supp. R. G(4)(b)(iii)(B). The government also provided direct notice to Haley's husband. (Dkt. No. 9); *see* Supp. R. G(4)(b)(i). Both notices stated that any claim was to be filed thirty-five days after they were sent, which was no later than August 29, 2018. (Dkt. No. 11, Attach. 2 ¶ 7); *see* Supp. R. G(4)(b)(ii). Additionally, beginning on August 22, 2018, the government posted public notice of this action on its official forfeiture website for thirty consecutive days. (Dkt. No. 8); *see* Supp. R. G(4)(a).

On September 14, 2018, Haley, with the assistance of attorney Lentz, filed a claim to the defendant currency. (Dkt. No. 7.) The untimely claim was filed without leave of the court or explanation. (*Id.*) On October 3, 2018, Haley filed an answer to the verified complaint. (Dkt. No. 10.)

Pending is the government's motion to strike Haley's claim and

answer. (Dkt. No. 11.) The government contends that "[Haley] has no statutory standing to contest this civil forfeiture action because her [l]ate [f]iled [c]laim was not filed within the time required," and "she did not first seek and obtain permission from this [c]ourt to file a late claim." (*Id.*, Attach. 1 at 1.) In response, Haley does not dispute that she had notice of the time for filing a claim or that her claim was untimely. (Dkt. No. 13.) Instead, she contends that, given her *pro se* status and limited resources, striking her claim and answer would be "extremely unfair and harsh." (*Id.* ¶¶ 2-3.) Haley also attaches a declaration from Lentz.[1] (Dkt. No. 13 at 3-5.[2]) Lentz declares that he filed the administrative claim for Haley and reached out to the government to effectuate a settlement but never heard back from it. (*Id.* at 3-4 ¶ 4.) He further declares that he "advised [Haley] that [he] would not be able to represent her in any judicial proceedings in the Northern District of New York and she needed to find another attorney

---

[1] Lentz, who declares that he is an attorney in California, has not filed a notice of appearance in this action and is not admitted in the Northern District, but nonetheless asserts that he plans to play a role in effectuating a resolution of this action, should it proceed. (Dkt. No. 13 at 3 ¶ 1, 4-5 ¶ 8.)

[2] Citations to this filing refer to the CM/ECF-generated page number(s).

or represent herself once a forfeiture complaint was filed." (*Id.* at 4 ¶ 5.) Lentz apparently did not know that Haley failed to file a claim until the deadline passed, at which point he "assist[ed]" her in quickly filing a claim. (*Id.* ¶ 6.) He further declares that "[Haley] did not understand the situation and what [he] had represented to her in terms of the scope of [his] representation." (*Id.* ¶ 7.) As such, he concludes that Haley's late filing was "an excusable error and mistake rooted in miscommunication." (*Id.* ¶ 8.) The court disagrees.

A person asserting an interest in defendant property subject to civil forfeiture "may contest the forfeiture by filing a claim in the court where the action is pending." Supp. R. G(5)(a)(i). "Unless the court for good cause sets a different time, the claim must be filed . . . by the time stated in a direct notice sent under [Supp. R.] G(4)(b)." Supp. R. G(5)(a)(ii). "[W]here a claimant fails to comply with the procedural requirements of the Supplemental Rules, his claim may be stricken for lack of statutory standing." *United States v. $1,084,170.78 seized from Seacomm Fed. Credit Union*, No. 8:14–cv–1537, 2015 WL 3500201, at *2 (N.D.N.Y. May 5, 2015) (internal quotation marks and citations omitted). However, the court "has the authority to extend the time period for filing verified claims" if

4

the would-be claimant demonstrates excusable neglect.³  *Id.*; *see* Fed. R. Civ. P. 6(b)(1)(B) (permitting a court to extend the time during which an act must be done "on motion made after the time has expired if the party failed to act because of excusable neglect").

The Second Circuit has described "excusable neglect" as an "elastic concept," which "tak[es] account of all relevant circumstances surrounding the party's omission."  *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) (internal quotation marks and citation omitted). Generally, courts determining whether a missed deadline resulted from "excusable neglect" consider the following factors:

> (1) the danger of prejudice to the party opposing the extension; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the party seeking the extension; and (4) whether the party seeking the extension acted in good faith.

---

³ Although *in rem* forfeiture actions are governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, they are generally buttressed by the Federal Rules of Civil Procedure.  *See United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars and Forty-Eight Cents ($417,143.48)*, No. 13–CV–5567, 2015 WL 5178121, at *4 (E.D.N.Y. Sept. 2, 2015).  As such, although Supp. R. G(5)(a)(ii) refers to "good cause," courts within the Second Circuit generally permit the filing of an untimely claim if the would-be claimant demonstrates "excusable neglect" pursuant to Fed. R. Civ. P. 6(b)(1)(B).  *Id.* at *9 (collecting cases).

5

*In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 129 (2d Cir. 2011) (internal quotation marks and citations omitted).  The Second Circuit has noted "that the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule" and, "where the rule is entirely clear, [courts should] continue to expect that a party claiming excusable neglect will, in the ordinary course, lose."  *Silivanch*, 333 F.3d at 366-67 (internal quotation marks and citation omitted).

First, the government does not identify any specific prejudice it would face if the court were to retroactively extend claimant's time for filing her claim.  (*See generally* Dkt. No. 11, Attach. 1.)  Instead, the government points out a more systemic danger: if the court grants belated extension requests, "then everyone could file late pleadings without a court's permission, and the deadlines would effectively cease to exist."  (*Id.* at 8.)  Although the court appreciates the government's sentiment, the balancing test is concerned with the specific prejudice to the government, of which there is little, if any, given that the length of the delay is less than one month.  *But see United States v. $541,395.06 U.S. Currency*, No. 10–CV–6555, 2012 WL 3614294, at *5 (W.D.N.Y. Aug. 21, 2012) (holding claimant lacked statutory standing when he filed answer one day after

6

deadline). Additionally, the government sets forth no evidence that Haley acted in the absence of good faith. However, given that the first two factors typically favor the moving party and the absence of good faith is rarely at issue, courts generally focus more attention on the reason for the delay. *See $1,084,170.78 seized from Seacomm Fed. Credit Union*, 2015 WL 3500201, at *3 (citing *Silivanch*, 333 F.3d at 366).

Notably absent from Haley's response in opposition to the government's motion is any justification for her delay outside of Lentz' declaration. (*See generally* Dkt. No. 13); *United States v. $541,395.06 U.S. Currency*, No. 10–CV–6555, 2012 WL 3614294, at *5 (W.D.N.Y. Aug. 21, 2012) (finding would-be claimant lacked statutory standing when he failed to provide an explanation for late filing). Although Haley now seeks to be shielded by her *pro se* status, she was previously represented by an attorney in the administrative proceedings involving the defendant currency, filed her claim with the assistance of an attorney, and continues to be aided by an attorney in some fashion. (Dkt. No. 7 at 1; Dkt. No. 13 at 3-5.) The government provided her, through her attorney, direct notice of the verified complaint, warrant of arrest *in rem*, and the deadline for filing a claim. (Dkt. No. 6); *see* Supp. R. G(4)(b)(iii)(B). Haley does not assert

7

confusion with the rules or that she was unaware of the need to file a claim by August 29, 2018. As a review of her claim demonstrates, no legal expertise was required to file a claim that met the clear dictates of Supp. R. G(5). Thus, filing a timely claim was certainly within Haley's ability to control.

Even if the court construes the declaration of Haley's former and perhaps future attorney as her own arguments, she fails to demonstrate excusable neglect. That is, Lentz' declaration that he advised Haley that he would not represent her if the government initiated civil forfeiture proceedings, (Dkt. No. 13 at 4 ¶ 5), cuts against his conclusion that "[Haley] did not understand the situation and what [he] had represented to her in terms of the scope of [his] representation," (*id.* ¶ 7). Haley's response contains no assertion that she believed Lentz would file a claim on her behalf, and the court can not reasonably infer that was what occurred—or whether such a belief was justifiable—in the absence of any explanation for such a belief. (*See generally id.*) Ultimately, Lentz' characterization of Haley's late filing as "an excusable error and mistake rooted in miscommunication," (*id.* at 4 ¶ 8), lacks support.

In sum, nothing in Haley's response constitutes excusable neglect.

*See $1,084,170.78 seized from Seacomm Fed. Credit Union*, 2015 WL 3500201, at *4. Given that Haley lacks statutory standing, she has no basis to contest the government's civil forfeiture action. *See United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999).

Accordingly, it is hereby

**ORDERED** that the government's motion to strike Haley's claim and answer (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that the Clerk shall strike Haley's claim (Dkt. No. 7) and answer (Dkt. No. 10) from the docket; and it is further

**ORDERED** that the Clerk terminate Haley as a claimant in this action; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to the government and Haley.

**IT IS SO ORDERED.**

April 26, 2019
Albany, New York

Gary L. Sharpe
U.S. District Judge